UNITED STATESE DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 1:22-cv-23945-JEM

OFFICE OF THE ATTORNEY GENERAL,
STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS,

    Plaintiffs,

v.

SMARTBIZ TELECOM LLC,
A Florida Limited Liability,

    Defendant.

_____/

## ORDER DENYING MOTION TO DISMISS

**THIS CAUSE** came before this Court upon Defendant Smartbiz Telecom LLC's ("Smartbiz") Motion to Dismiss and to Join Required Parties (the "Motion"), (ECF No. 12). This Court has reviewed the Motion; Plaintiff's Response, (ECF No. 20); Defendant's Reply, (ECF No. 23); and pertinent portions of the record and is otherwise fully advised in the premises. After careful consideration, and for the reasons set forth herein, the Motion, (ECF No. 12), is **DENIED**.

## BRIEF FACTUAL BACKGROUND

Plaintiff, Office of the Attorney General, State of Florida, Department of Legal Affairs, alleges that "Defendant transmits vast numbers of obviously fraudulent calls to residents of Florida and other states." (Response at 1; Compl. ¶¶ 56-81, ECF No. 1). Consumers have reported losing over $692 million to fraudulent robocalls in 2021 alone. (Compl. ¶ 1). The Industry Traceback Group ("ITG"), a neutral consortium appointed by the Federal Communications Commission ("FCC"), has notified Defendant over 250 times about fraudulent or otherwise illegal calls that

transited Defendant's network. (*Id.* ¶ 3). Plaintiff alleges "this deluge of scam robocalls invades consumers' privacy and can result in enormous monetary loss to consumers." (*Id.* ¶ 5). Despite over 250 tracebacks, it is alleged that Defendant continues to transmit fraudulent calls and profit off them rather than implement measures to prevent perpetration of fraud on its network. (*See id.* ¶ 8).

Not only has Defendant been notified it is transmitting fraudulent calls, but Plaintiff also alleges that Defendant knows when calls are fraudulent and does not block calls with invalid or otherwise improper calling phone numbers. (*Id.* ¶ 26). For instance, "Smartbiz transmits high volume, short duration call traffic that originates in a country that does not use the same numbering format as the United States, but where the calls appear as United States' phone numbers." (*Id.* ¶ 27). And even if Defendant had not been informed over 250 times that it was carrying fraudulent call traffic, Plaintiff alleges that Defendant should have known it was facilitating fraudulent calls based on the records it maintains. (*Id.* ¶ 35). Lastly, Defendant allegedly has access to call direct records ("CDRs") for all the call traffic that transits its network but does not analyze these CDRs to investigate whether its upstream providers are sending potentially illegal robocalls. (*Id.* ¶ 49).

Plaintiff commenced this action on December 5, 2022, alleging violations of the Telephone Consumer Protection Act ("TCPA") (Counts I and II); the Truth in Caller ID Act (Count III); Telemarketing Sales Rule (Count IV); and Florida's Deceptive and Unfair Trade Practice Act ("FDUPTA") (Count V). Plaintiff seeks statutory damages and to enjoin Defendant from transmitting fraudulent robocalls to consumers in Florida and elsewhere in the United States. (*See id.* at p. 31).

## **LEGAL STANDARD**

When pursuing a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1), a movant may challenge subject matter jurisdiction facially or factually. *Knezevich v. Carter*, 805 F. App'x. 717, 721 (11th Cir. 2020) (*citing Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)). When considering a facial attack, as we have here, courts take the allegations in the complaint as true in determining whether the plaintiff sufficiently alleged a basis for subject matter jurisdiction. *Id.* at 722.

In order to survive a Federal Rule of Civil Procedure 12(b)(6) motion, "a complaint must contain sufficient factual matter accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint does not need detailed factual allegations, a complaint requires more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's allegations "must be enough to raise a right to relief above the speculative level." *Id.* In reviewing a motion to dismiss, this Court accepts all factual allegations as true and views ambiguities in the light most favorable to the plaintiff. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005).

Lastly, dismissal for failure to join an indispensable party under Federal Rule of Civil Procedure 12(b)(7) is governed by Rule 19, which sets forth a two-part test: a person is a required party—or a necessary party—when (1) "in that person's absence, the court cannot accord complete relief among existing parties," or (2) where the absent party claims an interest relating to the action, disposing of the action without the absent party may "as a practical matter impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

## DISCUSSION

Defendant argues that dismissal is warranted for the following reasons: (1) Plaintiff does not have Article III standing; (2) the TRACED Act preempts Plaintiff's theories of liability; (3) Defendant did not "make" or "initiate" calls; (4) Plaintiff has not joined the required parties; (5) Count III contains a pleading defect; (6) Defendant did not provide substantial assistance under the Telemarketing Sales Rule; and (7) Count V cannot survive absent the others. (*See generally* Motion). This Court shall address each argument in turn.

**A.    Plaintiff has Article III Standing to Sue as *Parens Patriae*.**

Defendant argues that Plaintiff lacks standing to bring this action because the Complaint fails to allege that the victims suffered a concrete harm. (Motion at 4). In order to establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

In order to have standing and sue as *parens patriae* to enforce a federal statute, "a State must articulate an interest apart from the interests of particular private parties, that is, the State must be more than a nominal party." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 593 (1982). The State must express a "quasi-sovereign" interest, such as its interest in the health and well-being of its residents. *Id.* "One helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." *Id.* at 607. Here, a statute has been enacted. Therefore, the State "must demonstrate that, in enacting the statute, Congress clearly intended that the states

be able to bring actions in that capacity." *Connecticut v. Health Net, Inc.*, 383 F.3d 1258, 1262 (11th Cir. 2004).

Looking at the statutes that are alleged to have been violated by the Defendant, it is clear that Plaintiff has standing to bring this suit on behalf of its citizens. Plaintiff brought this action pursuant to explicit grants of statutory authority, specifically, 47 U.S.C. § 227(g)(1) of the TCPA, 47 U.S.C. § 227(e)(6)(A) of the Truth in Caller ID Act, and 15 U.S.C. § 6103(a) of the Telemarketing Sales Rule.

Next, Plaintiff's quasi-sovereign interests must be "sufficiently concrete to create an actual controversy between the State and the defendant." *Snapp*, 458 U.S. at 602. "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 578 U.S. 330 at 340. "The most obvious concrete harm is a physical injury or financial loss." *Drazen v. Pinto*, 74 F.4th 1336, 1342 (11th Cir. 2023) (citations omitted). However, an intangible harm can be considered concrete when the harm is similar in kind to the harm underlying a tort. In *Drazen*, a recent Eleventh Circuit opinion, the Court held that a single unwanted text message was sufficient to establish a concrete jury in fact, as required to have standing. *Id.* at 1346. The plaintiff alleged the class "suffered an invasion of a legally protected interest in privacy." *Id.* at 1343. The Court reasoned that the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion. *Id.* at 1343-1344. Here, Plaintiff alleges "this deluge of scam robocalls invades consumers' privacy." (Compl. ¶ 5). Plaintiff also alleges that the Defendant has been notified of over 250 tracebacks informing Defendant of transmitting illegal calls. (Compl. ¶ 8) Thus, because the *Drazen* court found that an invasion of privacy that comes with a single unwanted text is similar in kind to a tort harm and enough to establish a concrete injury (*Drazen*, 74 F.4th at 1343-1346), this Court also finds the transmission of over 250 fraudulent calls to be a

5

concrete injury. Accordingly, Plaintiff has standing to bring this action and Defendant's Motion is DENIED in this respect.

**B.     The TRACED Act does not Preempt Plaintiff's Claims.**

Defendant argues that the TRACED Act, a federal regulation promulgated by the FCC, preempts Plaintiff's claims in this action. (Motion at 7). The Court notes that Defendant fails to cite any case or other authority to support its proposition that a federal administrative agency's regulations preempt the federal statutes under which this action is brought. Moreover, under the doctrine of preemption, "[t]he Supremacy Clause of the Constitution supplies a rule of priority." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1094 (11th Cir. 2021) (internal quotations and citations omitted). "Thus, where a federal law and a state law conflict, 'federal law trumps state law.'" *Id.* (*quoting Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1167 (11th Cir. 2008). However, "[f]ederal regulations have no less pre-emptive effect than federal statutes." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). Accordingly, the Constitution makes federal law preemptive of state law but does not mandate that federal regulations preempt federal statutes. As such, the Motion is DENIED in this regard.

**C.     The TCPA Applies to Defendant.**

Defendant argues that TCPA does not apply to it because it did not "initiate" or "make" calls. (Motion at 13). Although the statute does not define what it means to initiate or make calls, the FCC analyzed whether entities that provide transmission facilities, such as Defendant, face potential liability under the statute. *In the Matter of Rules & Regs.. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, ¶ 54 (1992) (the "1992 Order"). The FCC likened these services to common carriers' liability for the transmission of obscene or indecent material and ordered that those providing transmission services could be liable under the TCPA where they

demonstrate "a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions." *Id.* (citing *In the Matter of Enf't of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 F.C.C. Rcd. 2819 (1987)). Here, the role Defendant plays in transmitting telephone calls falls within the scope of the FCC's 1992 Order. Plaintiff specifically alleged that Defendant received over 250 tracebacks giving it actual notice of the illegal use of its network, and that it failed to take steps to prevent the further transmitting illegal calls. (Compl. ¶¶ 3, 8).

Additionally, "one can violate the TCPA either by taking the steps necessary to physically place a telephone call, or by being so involved in the placing of a specific telephone call as to be deemed to have initiated it." *Mey v. All Access Telecom, Inc.*, No. 5:19-CV-00237-JPB, 2021 WL 8892199, at *4 (N.D.W. Va. Apr. 23, 2021) (citing *Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7890 (2015) (the "2015 FCC Order"). In *Mey*, it was alleged that the defendant knew when these unlawful spoofed robocalls are being placed through their systems, knew that the called spoofed an invalid number, passed on spoofed number as legitimate, profited from them, and willfully assisted and enabled successful spoofed calls. *See id.* at *4–5. Looking to the totality of the circumstances, the court found the allegations supported a plausible inference that the defendant was liable. *See id.* at *5.

Similarly, here, Plaintiff alleges that Defendant was notified approximately 250 times of fraudulent calls it has transmitted, despite having this knowledge it continued to connect these calls, profited from these fraudulent calls, refused to implement a means to check for these robocalls, and the calls would not have connected but for Defendant's decision to allow them to transit its network. (*See* Compl. ¶¶ 3, 6, 8, 50, 87). Looking to the totality of the circumstances, the Defendant not only demonstrated a high involvement, but also had actual notice of transmitting

7

fraudulent calls. *See Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D. W.Va. Oct. 4, 2018) (refusing to dismiss TCPA claims against VoIP providers who knew of the caller's illegal conduct and could have stopped it, but nevertheless permitted robocalls to be broadcast through their systems). As such, the Motion is DENIED as it relates to Defendant's liability under the TCPA.

**D.     Plaintiff Joined all Required Parties.**

Defendant seeks dismissal under Fed. R. Civ. P. 12(b)(7) for failure to join required parties under Fed. R. Civ. P. 19. (Motion at 14). Defendant argues that its upstream providers are equally liable and that their interests are being determined in this proceeding. (*Id.* at 15). "An absent party is considered necessary (i) if, in its absence, the court cannot accord complete relief among the existing parties to the action; (ii) if the nonparty's absence would have a prejudicial effect on that party's ability to protect its interest relating to the subject of the action; or (iii) if, due to the absent party's related interest, the nonparty's absence would leave the existing parties at a substantial risk of incurring inconsistent obligations upon the court's disposition of the current action. *Cuhaci v. Echemendia*, No. 20-CV-23950, 2021 WL 4307051, at *3 (S.D. Fla. Sept. 22, 2021) (citing Fed. R. Civ. P. 19(a)(1)). "If a party is not necessary, the inquiry ends there." *Mainstream Const. Grp., Inc. v. Dollar Properties, LLC*, No. 7:09-CV-00148-BR, 2010 WL 2039671, at *2 (E.D.N.C. May 20, 2010) (internal quotations and citation omitted).

"It is a basic rule of the law of joinder that 'it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.'" *United States v. Janke*, 2009 WL 2525073, at *2 (S.D. Fla. Aug. 17, 2009) (quoting *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990)). *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (holding joint tortfeasors are not necessary parties that must be joined in a single lawsuit). In *Raimbeault v. Accurate Mach. & Tool, LLC*, the plaintiffs implied wrongdoing on part of another party in their complaint. 302

F.R.D. 675, 683 (S.D. Fla. 2014). The Court noted that the plaintiffs did not need to prove any action by the other party to succeed on their claims. *Id.* The Court even pointed out that if they so desired, Plaintiffs could separately sue the other party in tort. *Id.* at 684. Therefore, the Court found that it could accord complete relief to all current parties of the action as to the tort and FDUPTA claims even absent the other party being joined and that the nonparties' interests were not implicated so as to require joinder. *Id.*

Here, Plaintiff alleges that other parties not named in this party have also participated in Defendant's wrongdoing. (*See* Compl. ¶¶ 57–63). However, just because they may have also committed wrongdoing does not make them a necessary party. *See Raimbeault*, 302 F.R.D. 675 at 683. This Court will still be able to accord complete relief without these parties joined because the Plaintiff is seeking to enjoin continued transmission of these scam calls and recover statutory damages for the alleged violations, (*see* Compl. at 31), which is individual to this Defendant alone. Moreover, Defendant argues that it has contracts with those parties and that such parties to a contract are required when a suit concerns the rights and obligations afforded by the contract. Defendant is correct that "in cases challenging he enforceability or validity of a contract, joinder of all parties to that contract will typically be required." *Raimbeault*, 302 F.R.D. 675 at 684. However, here, the enforceability of the contracts is not being challenged. Plaintiff is seeking to enjoin Defendant from transmitting fraudulent robocalls; it not seeking to terminate the contracts nor are the rights or obligations under the contracts being challenged. Accordingly, the Motion is DENIED in this regard.

E. **Count III does not Contain a Pleading Defect.**

Count III of the Complaint alleges that Defendant is violating 47 U.S.C. § 227(e), a provision of the Truth in Caller ID Act, by "knowingly causing the caller identification services

of the recipients of [Defendant's] call traffic to transmit misleading or inaccurate caller identification information including spoofed or otherwise misleading and inaccurate phone numbers." (Compl. ¶ 101). Defendant argues that the "entire Complaint is premised upon the notion that SBT is causing caller ID services to *unknowingly* transmit illegal robocalls." (Motion at 16) (emphasis in original). However, Plaintiff has supported its allegation by noting on various occasions that Defendant is aware it transmits calls with illegally spoofed phone numbers. (*See* Compl. ¶¶ 3, 8, 26, 51, 60, 65, 69, 73).

Additionally, the statute's implementing regulation states: "No person or entity in the United States . . . shall, with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly cause, directly, or indirectly, any caller identification service to transmit or display misleading or inaccurate caller identification information in connection with any voice service or text messaging service." 47 C.F.R. § 64.1604. Furthermore, in *United States v. Rhodes*, the United States pled that the defendant made thousands of robocalls playing a prerecorded voice message and did so using a dialing platform's service to display caller ID numbers that were not assigned to him. 2022 WL 2466796, at *7 (D. Mont. Apr. 1, 2022), *report and recommendation adopted*, 2022 WL 17484847 (D. Mont. Dec. 7, 2022). The United States further claimed that the defendant selected caller IDs that matched the area code of the call's recipient rather than his own. *Id*. The Court found that the United States had "alleged sufficient facts demonstrating the defendant knowingly caused a caller identification service to transmit misleading or inaccurate caller ID information in connection with a voice service." *Id*.

Based on the factual allegations here, this Court finds that Defendant "knowingly caused" fraudulent transmissions and thus properly pled 47 U.S.C. § 227(e)(1). As such, the Motion is denied as to Count III.

F.  **Plaintiff Properly Brought this Action under 15 U.S.C. § 6103(a).**

Defendant first argues that its conduct is regulated by the FCC, not the FTC. (Motion at 16). In its Response, Plaintiff argues that the FCC and the FTC have concurrent jurisdiction. (Response at 15). Defendant does not address Plaintiff's arguments in its Reply and as such, this Court deems them abandoned. "A party's failure to meaningfully respond to the opposing party's responsive counterarguments constitutes a concession of the counterargument's persuasiveness." *Ewing v. Carnival Corp.*, No. 19-20264-CIV, 2023 WL 2524530, at *3 (S.D. Fla. Mar. 15, 2023). *See Conden v. Royal Caribbean Cruises Ltd.*, No. 20-22956-CIV, 2021 WL 4973533, at *7 (S.D. Fla. June 21, 2021) (finding that the defendant conceded counterarguments raised in the plaintiff's response by not addressing the counterarguments in its reply); *see also W. Flagler Assocs., Ltd. v. City of Miami*, 407 F. Supp. 3d 1291, 1297 (S.D. Fla. 2019) ("The Defendant abandoned its argument regarding the Plaintiff's standing because its Reply failed to address any of the Defendant's arguments or authority.").

Next, Defendant argues that 15 U.S.C. § 6104 provides a private cause of action for violation of the Telemarketing Sales Rule and requires that any person, or authorized person acting on such person's behalf, can bring suit "if the amount in controversy exceeds the sum or value of $50,000 in actual damages for each person adversely affected by such telemarketing." (Motion at 17). Defendant then notes that the Complaint does not allege any damages exceeding $50,000. (*Id.*). However, Plaintiff did not bring this action under 15 U.S.C. § 6104, but rather under 15 U.S.C. § 6103(a), (Compl. ¶ 111), which does not have a damages requirement. Accordingly, the Motion is DENIED as to Count IV.

G.  **The FDUPTA Claims Survive Dismissal.**

Defendant argues that "[t]he FDUTPA claims cannot survive dismissal of all other claims due to lack of federal question jurisdiction." (Motion at 20). However, because this Court has denied the Motion to Dismiss as to Counts I-IV, the FDUPTA claims in Count V survive dismissal. As such, the Motion is DENIED as to Count V.

## CONCLUSION

Accordingly, for the reasons stated above, it is **ORDERED and ADJUDGED** that Defendant's Motion to Dismiss, (ECF No. 12) is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 23 day of August, 2023.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Becerra
All Counsel of Record